### G. E. ATKINS V. THE STATE.

No. 9655. Delivered February 3, 1926.

Rehearing denied March 10. 1926.

**1.—Murder—Charge of Court—On Threats—Properly Refused.**

Where, on a trial for murder, appellant requests a charge on threats, and the evidence does not reveal any previous threats of deceased, but shows that if there was threatening language by the deceased it was at the time of or during the difficulty and such language as shown in this record did not demand a charge on threats, and the requested charge was properly refused. Following Hancock v. State, 47 Tex. Crim. Rep. 3 and other cases cited, also Branch's Ann. P. C. Sec. 2075.

**2.—Same—Charge of Court—Submitting Murder—Held, Proper.**

Appellant contends that the insulting language of deceased at the time of the homicide raised the issue of manslaughter, and excluded that of murder. It is well settled in this state by Art. 1131 P. C. as well as the uniform decisions of this court, that insulting words such as were used by deceased to appellant is not, as a matter of law, adequate cause. See Art. 1133 P. C. Vernon's Tex. Crim. Stats., Vol. 1, p. 683. Following Simmons v. State, 23 Tex. Crim. App. 653 and other cases cited.

**3.—Same—Continued.**

The appellant's confession wherein he says that he killed the deceased because of insulting language, and that the deceased was not making any demonstration calculated to put appellant in fear of death or serious bodily injury, fully warranted the trial court in charging on the law of murder, and sustains the conviction of murder.

**ON REHEARING.**

**4.—Same—Evidence—Held, Sufficient.**

A careful review of the evidence on rehearing, does not sustain ap-

pellant's contention that murder was not established by the evidence. The confession of appellant, dying declaration of the deceased, and several eye witnesses who testified, established to our minds the offense of murder, notwithstanding that it did not show an unprovoked killing. No error warranting a reversal appearing in the record, the motion for rehearing will be overruled.

Appeal from the District Court of Grayson County. Tried below before the Hon. F. E. Wilcox, Judge.

Appeal from a conviction of murder, penalty six years in the penitentiary.

The opinion states the case.

*J. D. Buster* and *B. F. Gafford* of Sherman, for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at confinement in the penitentiary for a period of six years.

Appellant, a youth nineteen years of age, shot and killed Melzie Douglass. The tragedy occurred at the Farmington Church at a gathering for the purpose of singing.

According to the appellant's confession, introduced by the state, anticipating some trouble with Smith, appellant took a pistol to the gathering. After a quarrel with Smith in which appellant and his brother took part and during which weapons were drawn, had ceased, Melzie Douglass walked up and said: "You damn son of a bitch; you can't run me off." Appellant asked him whom he meant. Douglass replied: "You." Appellant struck at Douglass who retreated, walking backward. Appellant followed and was struck by Douglass on the shoulder. He then fired. In his confession appellant said:

"When he hit me, I hit at him, but he dodged and I missed him. Then he came overhanded, hitting at me with his right hand. I couldn't see anything in his hand. * * * I shot Douglass because he called me that name. I did not see anything in either hand when I shot him. His left hand was hanging down by his side and his right hand was up over his head. I never saw Douglass put his hands in his pocket or make any move toward his pockets."

According to the dying declaration of the deceased which was introduced in evidence by the appellant, while he (deceased) was undertaking to telephone, he heard his young

sister talking and asking that officers come to the Baptist church at Farmington as there were some boys who had guns and were threatening to kill the people. Deceased then went to the church to find out how the situation stood. One of the Atkins boys said: "We'll make them eat their own damn play house." The remainder of the declaration we quote:

"I am easy to get mad and I looked at them and said: 'You sons of bitches think you can run us off from our own home place, do you?' Then three of them jumped on me; three of the biggest ones. They held me and I challenged them to fight me, one at the time. I said: 'I'll fight any one of you,' and he shot me. He started to shoot again and I grabbed the gun and held on to it until I was so weak I had to fall. When he shot me I was standing on the outside trying to find out how everything stood, as I knew the law was due down there almost any minute."

Appellant requested and the court refused a special charge on the law of threats. In connection with the charge on self-defense, the jury was told, in substance, by the court that if immediately before the shooting, the deceased approached the appellant and his companion and by his acts or language provoked the difficulty, and the apellant was impressed thereby, as viewed from his standpoint, that he was in danger of suffering death or serious bodily injury and that the shot was fired under such belief, there should be an acquittal, though the jury might, in fact, believe that the appellant was not in danger. If there was evidence of antecedent threats by deceased against the appellant, it has escaped our notice. If there was threatening language by the deceased at the time of or during the difficulty, in the presence of the appellant, it did not demand a charge on threats. See Hancock v. State, 47 Tex. Crim. Rep. 3; Dobbs v. State, 54 Tex. Crim. Rep. 552; and other precedents collated in Branch's Ann. Tex. P. C., Sec. 2075.

We infer that the complaint of the refusal of the court to charge on threats comes from the testimony of the appellant and his brother, Jerry, which is summarized as follows: After reaching the church, Jerry said something to the appellant about some person opposing his (Jerry's) conducting Myrtle Douglass, a niece of the deceased, to her home. Jerry said that he had been told by Myrtle Douglass that those boys were going to wind him up at the church that night. He also had a letter from her to that effect. Appellant then found a pistol upon the person of his brother, which he took away from him.

It seems that Jerry Atkins had been going with Myrtle Douglass and had heard of no objections from the deceased. In fact, he was not acquainted with him. He had heard, however, that Algie Douglass, brother of the deceased, had made some objection thereto. Algie Douglass and Taylor Smith, after the difficulty between the appellant and Ralph Smith, left the church. Appellant said that he heard them saying something about going after their guns. Neither of these parties was present at the time of the homicide. According to the appellant and his brother Jerry, the first entry of the deceased into the transaction was his approach while the appellant and other friends were engaged in a friendly conversation, and his remark, with an epithet, that they thought he was afraid of them.

The issues raised by the evidence were, in our judgment, fully covered in the court's charge. No evidence of threats against the appellant or his brothers has been perceived which made necessary a charge on the law of threats in connection with the law of self-defense.

The aggressive conduct of the deceased relied upon to exclude the theory of murder seems to be the insulting language which was used and the offer to fight at the time of the difficulty, as detailed in the confession of the appellant and in the dying declaration of the deceased. In Article 1131, P. C. it is said:

"Insulting words or gestures, or an assault and battery, so slight as to show no intention to inflict pain or injury, or an injury to property, unaccompanied by violence, are not adequate causes."

It has been often held that an epithet such as that used by the deceased is not adequate cause, as a matter of law, under Article 1133, P. C. See Vernon's Tex. Crim. Stat., Vol. 1, p. 683. See also Simmons v. State, 23 Tex. Crim. App. 653; Lewis v. State, 231 S. W. Rep. 113. The apellant's confession wherein he says that he killed the deceased because of insulting language and that the deceased was not making any demonstration calculated to put the appellant in fear of death or serious bodily harm, while not conclusive against the appellant on the mitigating issues of manslaughter or self-defense, was such as warranted a charge on the law of murder. Moreover, eyewitnesses who testified upon behalf of the state, and the dying declaration which was introduced by the appel-

lant, impress us as warranting, and in fact, demanding such a charge.

Finding no error in the record, an affirmance of the judgment is ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—A careful review of the facts fails to convince us that there was any evidence of threats such as called upon the court to submit the law applicable thereto. The exception to the court's charge for its failure to submit such law is as follows:

"There is evidence in this case that certain persons known and unknown to the defendant had made threats to inflict injury upon the brothers of defendant and the defendant; that there is no mention of said threats nor any charge as to the law upon threats as to the brother or brothers or the defendant in this case."

The only threat, if such it might be considered, in this testimony was a reference to something said by a brother of deceased concerning a brother of appellant, but the facts before us do not measure up to the universal requirement that before one can use a prior threat as justification for an assault, or demand that the law of threats be given to the jury, it must appear that the deceased, or—we might add in a proper case—some one acting with deceased, did or said something indicating a purpose to execute such threat. The brother of deceased to whom is attributed the supposed threat, was not connected with what occurred at the fatal encounter herein, and we see no reason for changing our views in this regard from those announced in the original opinion.

It is urged that proof supporting conviction of any grade of homicide higher than manslaughter, is lacking—and for that reason a new trial should have been granted. The evidence pro and con on this issue has been again reviewed. Passing over the statement admitted to have been made by deceased in his dying declaration, and which is correctly held in our former opinion not to be sufficient to reduce the homicide to manslaughter, we observe that Richard Douglass swore that deceased, after making whatever statement he did, backed away from appellant and his crowd, shaking his finger at them and saying that he would fight them one at a time;

that deceased had nothing in his hands. That at this juncture appellant's father struck at deceased, who threw up his hand, and appellant then said, "Let me have the damn s—n of a b—h," and stepped in front of his father and shot. Mr. Dedmon swore that deceased came up to where he was and after making some inquiry about the trouble, went over and said something which witness could not understand, and then began backing away, followed by the Atkins, father and three sons. That deceased said if they would fight him fair he would fight them one at a time, and at this time appellant said, "Let me take him" and stepped around and shot. Others gave substantially the same testimony. The fact that this was controverted by appellant's witnesses is no reason for our holding that the jury erred in deciding the issue thus made in favor of the theory of the state.

Being unable to agree with the contentions of appellant, the motion for rehearing will be overruled.

*Overruled.*